IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| AMERICAN UNDERWRITING | § | Case No. 18-58406-SMS |
| SERVICES, LLC, | § | |
| | § | |
| | § | |
|     Debtor. | § | |

**EMERGENCY MOTION BY CHAPTER 11 TRUSTEE FOR AN ORDER
CONVERTING THE CHAPTER 11 CASE OF THE DEBTOR TO A CASE
UNDER CHAPTER 7 AND REQUEST FOR EXPEDITED HEARING**

**COMES NOW** S. Gregory Hays, as Chapter 11 Trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of American Underwriting Services, LLC, Debtor (the "**Debtor**") in the above captioned case (the "**Case**") and, by and through counsel, hereby files this *Emergency Motion by Chapter 11 Trustee for an Order Converting the Chapter 11 Case of the Debtor to a Case under Chapter 7 and Request for Expedited Hearing* (the "**Motion**"). In support of the Motion, the Trustee respectfully shows the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On May 18, 2018 (the "**Petition Date**"), the Debtor initiated the Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the **"Bankruptcy Code"**).

3. On May 22, 2018, the United Sates Trustee (the "**United States Trustee**") filed a Motion for Order Directing the Appointment of a Chapter 11 Trustee, or in the Alternative

Converting Case to Chapter 7, and Request for Hearing on an Expedited Basis [Doc. No. 16] (the "**US Trustee Motion**").

4. On June 26, 2018, the Court entered a Consent Order related to the US Trustee Motion that, among other things, directed the appointment of a trustee [Doc. No. 67] (the "**Consent Order**").

5. On June 27, 2018, the United States Trustee filed a notice of appointment of Chapter 11 Trustee pursuant to which S. Gregory Hays was appointed as the Chapter 11 Trustee for the Estate of the Debtor [Doc. No. 70]. On June 28, 2018, the United States Trustee filed an Application for Approval of Appointment of Trustee S. Gregory Hays [Doc. No. 73]. On June 29, 2018, the Court entered an order [Doc. No. 77] confirming the appointment of S. Gregory Hays as the Chapter 11 trustee in the Case and the Trustee is duly qualified to act in such capacity.

6. Since the appointment of the Trustee, the Trustee has conducted an investigation of the business affairs of the Debtor to determine whether a reorganization is possible or feasible in this Case. Based on that investigation, the Trustee has determined that, among other potential problems, the operations of the Debtor are not generating a profit, continue to suffer losses, and are insufficient to pay ongoing Chapter 11 administrative expenses, including attorney's fees and U.S. Trustee fees. Furthermore, the Trustee is not aware of any potential party willing to finance the operations of the Debtor pending a sale of the assets of the Debtor or through confirmation of any plan of reorganization nor are there any ready, willing or able buyers prepared to purchase the Debtor's business as a going concern. In the business judgment of the Trustee, the ongoing losses of the Debtor and inability of the Debtor to obtain adequate financing for the operations of the Debtor make reorganization highly unlikely, if not impossible.

**RELIEF REQUESTED**

7.By this Motion, the Trustee requests that the Court convert the Chapter 11 Case of the Debtor to a case under Chapter 7 *nunc pro tunc* to the date of the filing of this Motion.

8.Due to the continuing losses being incurred and fact that conversion has already been before the Court pursuant to the US Trustee Motion, the Trustee further requests that the Court set this Motion for hearing and determine the Motion on an expedited basis.

**BASIS FOR RELIEF**

9.Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 . . . for cause." 11 U.S.C. § 1112(b)(1). The term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4).

10.Immediately upon the appointment of the Trustee, the Trustee directed his counsel and accountant to conduct an investigation to determine whether a reorganization of the Debtor was possible in this case.  The Trustee, his advisor and attorney met with the Debtor's counsel and proposed financial advisor, both of whom fully cooperated with the Trustee, in providing information about the status of the Debtor's business.  The Trustee traveled to the offices of the Debtor and met with Russell Wiley, the principal of the Debtor, as well as with the employees of the Debtor.  The Trustee also consulted with creditors in this case, particularly the insurance companies through with the Debtor placed insurance coverage.  Finally, the Trustee conducted a review of the Debtor's books and records and of its financial performance.

11.At present, the Debtor is currently servicing approximately $20 million in outstanding policies and has accounts receivable of $575,000.  Of that accounts receivable

3

figure, approximately $535,000 constitutes premiums which must be remitted to insurance companies for coverage and $40,000 constitutes potential commissions to the Debtor. The Trustee has determined that in order to collect these receivables and earn even this limited, potential commission income, the Debtor must service the pending policies on an almost daily basis and will need to retain its existing employees. If the Debtor cannot service these policies, the pending policies will likely be cancelled or placed with other insurance brokers.

12. The Debtor's monthly operating expenses total approximately $50,000 with salaries and benefits of $39,000 and rent of $7,500 comprising the majority of the expenses. The Debtor is not currently generating sufficient cash to pay its monthly operating expenses and it appears the cash flow situation is worsening.

13. The Trustee's investigation has further revealed several major challenges to a reorganization of the Debtor. First, the Debtor requires a license from the Georgia Department of Insurance in order to operate its business. Prior to the appointment of the Trustee, the Georgia Department of Insurance commenced an action to terminate the licenses of both the Debtor and its principal, Russell Wiley with a hearing to be held on July 30, 2018. As of the filing of this Motion and upon information and belief, Mr. Russell Wiley has decided to surrender his license. With respect to the license of the Debtor, the Trustee has contacted the Georgia Department of Insurance and believes that a short extension of the termination of the Debtor's license might be possible but that the Debtor will ultimately lose its license.

14. Second, since the filing of this Case, the Debtor has not earned enough commissions to cover monthly operating expenses. In addition to these losses, the Debtors have incurred significant professional fees during the case which, the Trustee is advised, exceed the amounts of the retainers held by them. Absent a cash infusion or a cash payment from the sale

of the business as a going concern, the Debtor is likely administratively insolvent at the present time

15. Third, the $20 million in policies being serviced by the Debtor were placed with approximately ten different insurance carriers. Currently there is only one carrier still doing business with the Debtor. Many of the other nine carriers have contacted the Trustee and indicated they are owed money and have no intention of continuing to do business with the Debtor. Upon renewal of the policies, the Debtor has limited its market for renewal of the policies to just this one company. For example, ACE American Insurance Company (dba "Chubb") has filed a Motion for Relief from Stay seeking to terminate its agreements with the Debtor. Disturbingly, Chubb has alleged, similar to other insurance companies, that the Debtor did not forward all premiums collected by it despite being required to segregate all premium collections.

16. Upon his appointment, the Trustee investigated whether a sale of the Debtor's business as a going concern was possible. The Trustee was advised that neither the Debtor nor its professionals had explored a sale as of the appointment of the Trustee and, indeed, there was no back up plan in place if a reorganization could not be achieved.

17. The Trustee immediately explored discussions with both current employees and third parties concerning the purchase of the Debtor's business assets, and potential renewal rights, as a going concern. With respect to third parties, the Trustee has contacted a potential purchaser referred by the Debtor's financial consultant (there had been no prior contact with that entity), but that party was not interested. The Trustee contacted a well known and respected broker in this industry who advised that the potential book of business was too low and had too many issues. The Trustee also contacted several other parties and provided due diligence

5

packages to no avail. The Trustee has had discussions with Neil Wiley, the former shareholder of the Debtor.  The discussions with Mr. Wiley have been slow and hampered by uncertainty of financing, licensing issues, need for more due diligence and pending litigation against Mr. Wiley.  Although the Trustee believes that Mr. Neil Wiley has acted in good faith and was sincerely interested in saving the Debtor, there are too many hurdles to any transaction with Mr. Neil Wiley.

18. Ultimately, the Trustee determined that the sale of the business as a going concern was likely to be both expensive and subject to a high execution risk.  In particular, the Trustee has been informed by one of the largest insurance companies that it would not renew any of the Debtor's policies which will significantly damage the potential value of the business.  Further, the reputation of the Debtor has been damaged by the conduct which preceded this Chapter 11 Case which has also significantly damaged the potential renewal commissions with the Debtor might otherwise expect to collect from other insurance companies.  Ultimately, the Trustee has not been able to locate a buyer willing to pay any significant amount for the Debtor's assets which would justify continuing the Debtor's business and engaging in a sale process in this Court.

19. Fourth, many of the Debtor's other insurance companies are now asserting that premiums collected by the Debtor were not remitted to them and others have advised the Debtor that they have claims for refunds.  The Trustee is currently attempting to determine the Bankruptcy Estate's liability for these claims and also attempting to determine whether the asserted claims are pre- or post-petition or whether they are trust fund claims entitled to some priority.  The Trustee is concerned that these claims could be significant.

20. Fifth, the Trustee is very concerned about the potential liability for the Estate if it continues business and continues writing policies. Although the Trustee has proper safeguards in place to ensure premiums collected by the Trustee are remitted to insurance companies and although potential commission exists, the Debtor is responsible for policy changes --- specifically the addition or deletion of vehicles from policies or changes in coverage. The Trustee has exercised his best efforts to manage the Debtor's business and has concluded that if this business were to continue, he would require a full time manager on premises to make sure that no mistakes or errors occurred in writing business.

21. Sixth, the Debtor's rent is currently paid through July 31, 2018. In order to keep the Debtor's business premises through August, the Estate would be required to pay $7,500. The Trustee does not believe, based on the current circumstances of this case, that the Bankruptcy Estate should incur this liability and believes the current lease should be rejected effective August 1, 2018.

22. Under the circumstances, the Trustee believes that sufficient cause exists to convert the Case to a proceeding under chapter 7 because: a) the operations of the Debtor continue to cause a substantial or continuing loss to or diminution of the Estate; b) the Debtor does not have a reasonable likelihood of rehabilitation and c) there does not appear to be any buyer willing to purchase the Debtor's business as a going concern. In business judgment of the Trustee, the administration of the Case will be more effective and more efficient under Chapter 7 as the substantial or continuing loss to or diminution of the Estate from the operations of the Debtor makes reorganization unlikely. Moreover, the elimination of certain expenses unique to Chapter 11, such as U.S. Trustee fees and expenses related to the filing of monthly financial reports, should minimize expenses and ensure a maximum recovery to the creditors of the Estate

of the Debtor. In addition, even if the business is shut down, the Trustee can still seek to sell the Debtor's customer lists or other business information to potential buyers. The Trustee believes that: a) the limited resources of the Estate will continue to be wasted if the Debtor remains in Chapter 11 since continuing the Case in Chapter 11 is simply an expensive exercise of futility; and b) conversion of the Case to a proceeding under Chapter 7 is in the best interests of the Estate, the Debtor, and its creditors.

23. Given the potential for further Chapter 11 administrative expenses that may otherwise be unnecessary and the fact that the previous request to convert Case to a proceeding under Chapter 7 was tabled upon the entry of the Consent Order, an expedited hearing on this Motion is in the best interests of Debtor and the creditors of the Debtor.

WHEREFORE, Trustee requests that this Court: (a) grant this Motion; (b) set this matter for hearing on an expedited basis; (c) enter an order converting the Chapter 11 Case of the Debtor to a proceeding under Chapter 7 pursuant to 11 U.S.C. §1112(b) effective as of the date of the filing of this Motion; (c) authorize the Trustee to continue as the Chapter 7 Trustee in the Case until further order of this Court; (d) direct the appointment of a Chapter 7 trustee for the

bankruptcy Estate of the Debtor; and (e) grant such other and further relief as the Court deems just and proper.

Date: July 26, 2018.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

COUNSEL FOR THE TRUSTEE

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing *Emergency Motion by Chapter 11 Trustee for an Order Converting the Chapter 11 Case of the Debtor to a Case under Chapter 7 and Request for Expedited Hearing* was served via the Court's ECF system to all parties registered with the system who have filed appearances.

This 26th day of July, 2018.

    Respectfully submitted,

    LAW OFFICES OF HENRY F. SEWELL JR., LLC

    ***/s/ Henry F. Sewell, Jr.***
    Henry F. Sewell, Jr.
    Georgia Bar No. 636265
    Buckhead Centre
    2964 Peachtree Road NW, Suite 555
    Atlanta, GA 30305
    (404) 926-0053
    hsewell@sewellfirm.com

    COUNSEL FOR THE TRUSTEE