**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| AMERICAN UNDERWRITING | § | Case No. 18-58406-SMS |
| SERVICES, LLC, | § | |
| | § | |
| | § | |
| Debtor. | § | |

**TRUSTEE'S CONSOLIDATED OBJECTION TO FINAL APPLICATIONS FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED BY COUNSEL
FOR THE DEBTOR AND DEBTOR'S CHIEF RESTRUCTURING OFFICER**

**COMES NOW,** S. Gregory Hays, Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate of American Underwriting Services, LLC, Debtor (the "**Debtor**") in the above captioned case (the "**Case**"), and herewith files this Consolidated Objection to (i) Final Application for Compensation of Small Herrin, LLP ("SmallHerrin") as Bankruptcy Counsel to Debtor and Debtor-in-Possession (the "SmallHerrin Application") (Doc. No. 95) and (ii) Final Application for Compensation of Chief Restructuring Officer (the "GGG Application") (Doc. No. 94) filed by GGG Partners, LLC ("GGG") and states as follows:

**BACKGROUND**

1.      On May 18, 2018, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On June 27, 2018, the United States Trustee filed a notice of appointment of Chapter 11 Trustee pursuant to which S. Gregory Hays was appointed as the Chapter 11 Trustee for the bankruptcy estate of the Debtor.

2.      On August 1, 2018, the Court converted the Case to a proceeding under Chapter 7 effective July 27, 2018 [Doc. No. 106] and directed the United States Trustee to appoint a trustee in the Chapter 7 Case.

3.      On August 13, 2018, the United States Trustee filed a Notice of Appointment of Interim Trustee and Section 341(a) Meeting of Creditors [Doc. No. 108] in which S. Gregory Hays was appointed as interim trustee in the Chapter 7 Case.

4.      On July 24, 2018, prior to the conversion of this Case, SmallHerrin filed the SmallHerrin Application in which it sought approval of compensation in the amount of $85,225.00 and reimbursement of expenses in the amount of $2,700.21 for services rendered in connection with the case from the Petition Date through June 27, 2018.  The SmallHerrin Application further disclosed that SmallHerrin continues to hold a retainer in the amount of $53,298.00 (the "SmallHerrin Retainer") and sought authority to draw down the SmallHerrin Retainer against any fees awarded by the Court.

5.      In the GGG Application, GGG seeks approval of compensation in the amount of $37,207.27 for services rendered in connection with the case from the Petition Date through June 29, 2018.   In the GGG Application, GGG stated that it was holding a retainer in the amount of $20,000 (the "GGG Retainer") (the SmallHerrin Retainer and GGG Retainer shall be collectively referred to as the "Retainers") and sought authority to draw down the GGG Retainer against any fees awarded to it by the Court.

**SOURCES OF THE RETAINERS**

6.      Based on disclosures made by SmallHerrin, SmallHerrin received payments of $77,000.00 related to this matter prior to the filing of the Petition.  Further, SmallHerrin credited $23,702.00 of this amount toward its pre-petition fees, leaving the balance of the SmallHerrin

Retainer.   SmallHerrin further disclosed that $60,000 of the $77,000 it received was received from Transport South Insurance Agency, LLC, an entity owned by Russ Wiley, the Debtor's principal. Additionally, SmallHerrin received pre-petition payments of $17,000 from The Wiley Group, Inc., the sole member of the Debtor.   SmallHerrin asserted in its Retention Application, as amended, that its understanding from Mr. Wiley was that the funds sent to SmallHerrin from Transport South and The Wiley Group belonged to the Debtor and were being held by those entities on behalf of the Debtor.

7.       The GGG Retainer was similarly paid using funds from Transport South.    The Amended Retention Application filed by GGG states that GGG received a  retainer of $20,000.00 from Debtor funds "being held in an account controlled by Transport South Insurance Agency, LLC, a company owned by Russ Wiley, the shareholder of Debtor's sole member."

**8.**       In response to Question 13 on its Statement of Financial Affairs, Debtor stated, "[w]hen the garnishments were filed against [Debtor's] accounts by ProSight Specialty Management Company, Inc., *et al*., it was necessary for [Debtor] to continue its business and to pay lawful debts which it owed to other creditors and to make premium payments which it held in trust for other insurance companies. Accordingly, between January 31, 2018 and the Petition Date, $4,287,417.10 was deposited by representatives of the Debtor into accounts of affiliated companies. The monies were used by [Debtor] to satisfy payroll, tax obligations, vendor debts and to pay sums of money held in trust for other insurance."

9.       In more direct terms, the Debtor transferred $4,287,417.10 to affiliated companies for the purpose of avoiding a garnishment served by a judgment creditor of the Debtors.  To the best of the information, knowledge and belief of the Trustee, no consideration was paid to the Debtor in connection with these transfers.  Further, also to the knowledge, information and belief

of the Trustee, there were no written agreements between the Debtors and its affiliates with respect to the use of these funds.

10.     The Trustee is informed that the Debtor claims that **all** of the $4,287,417.10 transferred to its affiliates was used to pay valid debts and obligations of the Debtor. By the Petition Date, just over $200,000 remained from these transfers which was then moved to debtor-in-possession accounts.

11.     As of the filing of this Objection, the Trustee has not confirmed that the **entire** $4,287,417.10 was, in fact, used to pay debts and obligations of the Debtors.  Indeed, the Trustee has not confirmed that the $4,287,417.10 amount identified in the Schedules is the true and correct amount transferred by the Debtor to its affiliates.  It is going to take the Trustee some time to fully investigate and trace the uses of these funds.

12.     The Debtor was a program insurance underwriter essentially serving as a middleman between insurance agents and their customers, on the one hand, and insurance companies, on the other hand, to place insurance coverage in the transportation area.  As such, the Debtor collects insurance premiums from insurance agents and their customers and then remits these premiums, less a commission payable to the Debtor, to the applicable insurance company.

13.     The commissions payable to the Debtor vary by insurance company; however, generally speaking, the Debtor was not entitled to retain more than ten percent of all monies received by it as a commission and was required to tender the balance to the applicable insurance company as a premium for insurance coverage.  Indeed, the insurance companies with which the Debtor conducted business assert that the premiums collected by the Debtor were supposed to be held in trust by the Debtor pending payment to the

appropriate insurance company.  Several of the insurance companies with which the Debtor did business have advised the Trustee that the Debtor was required to segregate their premiums in special accounts specifically earmarked for that insurance company.

14.     Although the Trustee has not yet completed his investigation of the financial affairs of the Debtor, it is clear that the Debtor disregarded its obligations to segregate insurance premiums and regularly comingled premiums collected by it into just a few bank accounts.

15.     With respect to the $4,287,417.10 which was transferred by the Debtor to the Debtor affiliates, and which was also the ultimate source of the SmallHerrin Retainer and GGG Retainer, it is likely that the Debtor was obligated to segregate and pay to insurance companies at least ninety percent of this amount and that the Debtor's commission share of these funds, to be used to fund the Debtor's operating and other expenses, was at most ten percent of this amount.

16.     With respect to each of the GGG Retainer and the SmallHerrin Retainer, the Trustee cannot state at this time whether these retainers represented the proceeds of premiums attributable to any specific insurance company and, indeed, it may be impossible to trace either  of the Retainers to any particular premium received by the Debtor.

17.     The Trustee is advised and informed, based upon his review of the Debtor's Petition, that the Debtor owes in excess of  $8 Million to insurance companies for premiums which were collected but not remitted to such insurance companies.   The Trustee is further advised that one or more of the insurance company creditors in this case may assert that some or all of each of the SmallHerrin Retainer or GGG Retainer may constitute the trust funds of such insurance companies.

**OBJECTION**

**A. Objections as to Amounts**

18.     The Trustee has reviewed the Applications of each of GGG and SmallHerrin and has consulted with the United States Trustee regarding the Objections.

19.     With respect to the amount of compensation and expense reimbursement requested in the SmallHerrin Application, the Trustee joins in the Objection of the United States Trustee with respect to the amount requested by SmallHerrin and submits that the total amount of fees requested by SmallHerrin should be reduced by $15,163.33 as requested by the United States Trustee.

20.     With respect to the amount of the GGG Application, the Trustee has no particular objection to the fees requested at this time, but joins in the Objection of the United States Trustee to the GGG Application in requesting that additional detail be provided by GGG with respect to the requested fees.    The Trustee reserves the right to amend and supplement its objection based on the additional information provided by GGG.

**B. Objections as to Retainers**

21.     With respect to each of the SmallHerrin Retainer and the GGG Retainer, and to the extent that any compensation or reimbursement of expenses is awarded by the Court, the Trustee objects to SmallHerrin and GGG drawing down the Retainers unless certain conditions are imposed by this Court and consented to by each of SmallHerrin and GGG.

22.     It is clear that Debtor's transfers of 4,287,417.10 to its affiliates may constitute fraudulent conveyances pursuant to the Bankruptcy Code or applicable state law.  Indeed, the

Debtor has admitted that these funds were transferred with actual intent to hinder and delay a judgment creditor.  Each of SmallHerrin and GGG may therefore be considered a subsequent transferee of a fraudulent conveyance.   Further, if a fraudulent conveyance action is brought against the initial transferee, such initial transferee may, in turn, bring actions against SmallHerrin and GGG to recover the respective retainers.

23.     To the extent that the monies transferred, first, to the Debtor's affiliates and, second, to each of SmallHerrin and GGG, are trust funds, claims may also exist to trace and seek the return of the retainers from SmallHerrin and GGG.

24.     As of the filing of this Objection, the Trustee has not determined whether to bring a fraudulent conveyance action against the initial transferees of the $4,287,417.10, or additional funds,  transferred by the Debtor or against any subsequent transferees thereof, including claims directly against SmallHerrin or GGG to recover the Retainers.

25.     Accordingly, to the extent that this Court awards compensation and reimbursement of expenses to either of SmallHerrin or GGG, this Court should condition any authority to draw down either Retainer as follows:

a. Each of the SmallHerrin Retainer and GGG Retainer shall remain subject to avoidance as a fraudulent conveyance or similar claim by either the Trustee or a party with standing to assert such claim and the authority to draw down such Retainer shall be without prejudice to such claims;

b. Each of the SmallHerrin Retainer and GGG Retainer shall remain subject to tracing or other claims related to claims that the either retainer constitutes trust funds which may be recovered by the Trustee or any creditor with standing to assert such claims; and

c.  Neither SmallHerrin nor GGG shall be permitted to cite this Court's authorization to draw down either retainer as a defense or justification to any fraudulent conveyance, tracing or similar action which may be brought against either of SmallHerrin or GGG to recover either of the respective retainers.

26.    The Trustee respectfully submits that if this Court is inclined to permit the draw down of the Retainers at this time, such authority should be limited and conditioned as set forth herein.  Further, if either SmallHerrin or GGG is unwilling to consent to such terms and conditions, they should be required to forfeit the Retainer and return the proceeds thereof to the Bankruptcy Estate.

**C.  Objections as to Payment**

27.    The compensation and reimbursement of expenses requested by SmallHerrin and GGG are, at best, administrative expense claims against the Debtor's Chapter 11 Bankruptcy Estate.  As such, these claims would be subordinate to the administrative expenses of the Debtor's Chapter 7 Bankruptcy Estate, including, but not limited to, any fees, compensation and reimbursement of expenses which may be awarded to the Chapter 7 Trustee or professionals employed by the Chapter 7 Trustee.

28.    As of the filing of this Objection, it is not certain that there will be sufficient funds in the Chapter 7 Bankruptcy Estate of the Debtor to pay the administrative expenses of the Chapter 11 Bankruptcy Estate.

29.    Accordingly, the payment of any compensation and reimbursement of expenses authorized by the Court should be delayed unless and until the Trustee determines that sufficient funds exist to pay allowed administrative claims in the Chapter 7 Bankruptcy Estate and that funds exist to make distributions on account of Chapter 11 administrative claims.  This Court should not

authorize or direct the Trustee to pay any amounts awarded in connection with the Applications in

excess of the Retainers at this time.

## RESERVATION OF RIGHTS

30.     The Trustee reserves the right to amend and supplement this Objection.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Trustee's objections to each of

the SmallHerrin Application and GGG Application be sustained as requested herein and for such

other and further relief as the Court may deem just and proper.

Dated:  September 5, 2018                    Respectfully submitted,


**LAW OFFICES OF HENRY SEWELL JR. LLC**

By: */s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
2964 Peachtree Road, NW
Suite 555
Atlanta, GA 30305
Telephone – (404) 926-0053
Email: hsewell@sewellfirm.com

**PROPOSED COUNSEL FOR THE CHAPTER 7
TRUSTEE**

## CERTIFICATE OF SERVICE

   This is to certify that service of the foregoing document was served via the United States Bankruptcy Court for the Northern District of Georgia's Electronic Case Filing System to all parties who have filed appearances and requested notices in this case and as follows:

Dated:  August 28, 2018       Respectfully submitted,


            **LAW OFFICES OF HENRY SEWELL JR. LLC**

            By: ***/s/ Henry F. Sewell, Jr.***
            Henry F. Sewell, Jr.
            Georgia Bar No. 636265
            2964 Peachtree Road, NW
            Suite 555
            Atlanta, GA 30305
            Telephone – (404) 926-0053
            Email: hsewell@sewellfirm.com

            **PROPOSED COUNSEL FOR THE CHAPTER 7 TRUSTEE**